IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRENDA TONIECE VANN, ) | |
| ) | |
| Petitioner/Defendant, ) | |
| ) | |
| v. ) | No. CIV-14-300-JHP |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent/Plaintiff ) | |

**OPINION AND ORDER**

Before the Court is Petitioner Brenda Toniece Vann's "Amended Motion Under 28 U.S.C. 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody." Ms. Vann makes various ineffective assistance claims against two attorneys who represented her on federal criminal drug charges, Assistant Federal Public Defender Rob Ridenour and CJA panel attorney Jill Webb. Specifically, Ms. Vann alleges that (1) Mr. Ridenour was ineffective in advising her regarding pleading guilty, (2) Mr. Ridenour was ineffective for failing to review discovery with her, (3) Ms. Webb was ineffective in failing to file an appeal, (4) both counsel were ineffective in failing to object to the PSR, and (5) both counsel were ineffective in failing to obtain safety valve relief. Having considered Petitioner's motion, the government's response, and the well-developed record, the Court hereby finds that Petitioner's motion is DENIED.[1]

Petitioner, along with her daughter, Lisa Autumn Shiann Creech, and Creech's boyfriend, Andrew Kelli Braddock, was charged with Count One: Conspiracy to Manufacture Methamphetamine, in violation of 18 U.S.C. § 846; Count Two: Manufacture of

---

[1] Because "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," no evidentiary hearing is necessary. 28 U.S.C. §2255(b). *See also United States v. Barboa*, 777 F.2d 1420, 1422, n. 2 (10th Cir. 1985).

1

Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2; Count Three: Endangering Human Life While Illegally Manufacturing Controlled Substances, in violation of 21 U.S.C. § 858 and 18 U.S.C. § 2; and Count Four: Manufacture of Methamphetamine on Premises Where Children are Present or Reside, in violation of 21 U.S.C. §§ 860a and 841(b)(1)(C) and 18 U.S.C. § 2. The charges arose from Ms. Vann's two-year old granddaughter being admitted to the emergency room at Hastings Hospital in Tahlequah with a nine-inch by five-inch burn on her upper chest and arm which medical professionals at the hospital identified as a second degree chemical burn.

In the days prior to the child's admission to the hospital, the child had been primarily in Ms. Vann's care while Ms. Creech was away with Mr. Braddock. Vann, Creech, and the child lived in the same residence. Ms. Vann identified herself as a long-term drug addict. She admitted manufacturing methamphetamine inside the residence once or twice a week, though she denied "cooking" while her grandchild was in the home. Ms. Vann told law enforcement she could not explain how the child had been burned but assumed that some of the methamphetamine chemicals had spilled on the shirt the child had been wearing prior to her putting it on. Similarly, Mr. Braddock told law enforcement Ms. Creech had informed him Ms. Vann had "cooked" methamphetamine earlier in the week and had spilled chemicals from the lab on the child's shirt. The child had been wearing the shirt for several days, but apparently did not sustain an injury until she got into the shower wearing the shirt and water hit the shirt, activating the chemicals. Burn marks on the inside of the shirt were consistent with the burns on the child's body.

Vann, Braddock and Creech all admitted to law enforcement agents that they were purchasing pseudoephedrine for Vann to use to manufacture methamphetamine. Law

enforcement agents corroborated these admissions with records from various pharmacies in the areas surrounding Vann and Creech's home. Records establish Ms. Vann purchased 126.24 grams of pseudoephedrine, Creech 107.52 grams and Braddock 33.6 grams, for a total of 267.36 grams of pseudoephedrine. Additionally, various items associated with methamphetamine manufacturing had been removed from the home and were located in Ms. Vann's vehicle.

At her arraignment, Assistant Federal Public Defender Rob Ridenour was appointed to represent Ms. Vann. She later pled guilty without a plea agreement to Counts 1, 2 and 4. Count 3 remained outstanding. The trial on Count 3 was stricken indefinitely to be reset, if necessary, after sentencing on the other counts. Following a series of sealed motions, this Court directed new counsel be appointed for Ms. Vann. Jill Webb was so appointed.

At sentencing, this Court held Ms. Vann accountable for the pseudoephedrine purchased by Creech and Braddock in addition to her own purchases. The 267.36 grams of pseudoephedrine was converted to its marijuana equivalent (2,673.6 kilograms) and assigned a base offense level of 32. Six levels were added for the risk of harm to the life of a minor child pursuant to U.S.S.G. § 2D1.1(b)(13)(D) and Ms. Vann was determined to be a leader/organizer pursuant to U.S.S.G. § 3B1.1(c), resulting in another two-level increase. After a three-level reduction for acceptance of responsibility, Defendant's final offense level was 37. Combined with her Category I criminal history, the resulting recommended imprisonment range under the Guidelines was 210 - 262 months.

Ms. Vann was sentenced to 175 months of imprisonment on Counts One and Two and a consecutive sentence of 60 months on Count Four.[2] The government dismissed Count Three.

---

[2] 21 U.S.C. § 860a mandates the sentence on Count Four be imposed consecutively to the sentence on the other offenses.

This Court also imposed an eight-year term of supervision and ordered a $100.00 special assessment on each of the three counts of conviction.

Ms. Vann did not directly appeal her sentence, but rather executed an "Acknowledgment and Waiver of Right to Appeal." She subsequently filed this 28 U.S.C. § 2255 motion alleging ineffective assistance of counsel by both Assistant Federal Defender Ridenour and appointed counsel Ms. Webb.

To establish ineffective assistance of counsel, a petitioner must "[f]irst . . . show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Additionally, "the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* Ms. Vann must prove both deficiency and prejudice before she is entitled to relief.

### 1. The Guilty Plea

Ms. Vann calls upon *Missouri v. Frye*, 132 S.Ct. 1399 (2012) and *Lafler v. Cooper*, 132 S.Ct. 1376 (2012) and alleges Mr. Ridenour was ineffective in advising her regarding her guilty plea. In *Frye*, the Supreme Court held the Sixth Amendment right to effective assistance of counsel extends to the negotiation and consideration of plea offers that have been rejected or lapsed. "[A]s a general rule," the Court explained, "defense counsel has the duty to communicate formal prosecution offers to accept a plea on terms and conditions that may be favorable to the accused." 132 S.Ct. at 1408. In *Lafler*, the Supreme Court held that a defendant who turned down a favorable plea offer because he received incorrect legal advice from his

attorney may maintain a claim for ineffective assistance of counsel. To prevail on such a claim, the defendant must establish that were it not for the ineffective assistance, (1) the plea offer would have been presented to the court, (2) the court would have accepted its terms, and (3) the defendant was convicted of more serious offenses or received a less favorable sentence than would have been the case under the terms of the offer.

However, *Frye* and *Lafler* can only provide Ms. Vann relief if the government has actually offered a plea agreement. Ms. Vann admits she was not sure "if an actual plea deal was offered." The government has denied offering a plea, and Mr. Ridenour has stated that prior to Ms. Vann's guilty plea, he explained that "the Government had not and would not offer her a plea agreement." *Ridenour Aff*.

Ms. Vann also alleges Mr. Ridenour promised her a 14-year sentence if she pled blind and that she would have proceeded to trial had she known she could get 19.5 years. Again, Mr. Ridenour expressly denies making such a promise. *Ridenour Aff*. The record, particularly the plea colloquy, supports Mr. Ridenour's account of the facts.

Both the prosecutor and the magistrate judge who took the plea advised Ms. Vann of the statutory maximums for each count: up to life on Count One, up to 30 years on Count Two and up to 20 years on Count Four. Ms. Vann acknowledged her understanding of the charges and the possible punishment, including the Court's statement that "[y]our maximum term of exposure less any financial sanctions is any term of years up to life in prison." *Plea Tr*. at 8.

The prosecutor estimated Ms. Vann would likely be subject to a life sentence due to the serious bodily injury to her granddaughter. Mr. Ridenour disagreed that life was appropriate. He noted that the ultimate sentence would be dependent on the Court's findings on potential enhancements. However, even if the Court accepted his arguments as to the enhancements, Ms.

Vann would still be subject to a "15, 16, 17 year sentence" and that while the Court might be lenient, "it is not going to be much lower than that." *Id.* at 10, 11. The Court specifically asked Ms. Vann, "Mr. Ridenour just said this, but I want to make sure you understand that if the sentencing judge agrees with the prosecutor, you are going to get a life sentence?" to which Ms. Vann responded, "Yes, sir." *Id.* at 11. The plea colloquy establishes Ms. Vann's awareness she could receive a much higher sentence than the 19.5 years – up to life.

Moreover, Ms. Vann was expressly advised that the sentencing judge would have sole control of her sentence and that if anyone else had promised her a lighter sentence they would have had no authority to make such a promise. *Id.* at 15-17. She acknowledged her understanding. Further, she never mentioned Mr. Ridenour's alleged promise of only fourteen years. Given these facts, Ms. Vann has not established that Mr. Ridenour's performance was deficient with respect to her decision to plead guilty.

Ms. Vann alleges had Mr. Ridenour "not given erroneous advice" she would have proceeded to trial, but this self-serving statement alone is insufficient to establish prejudice. Prior to accepting Ms. Vann's guilty plea, the Court informed her of the statutory limits on sentencing and explained that the ultimate sentence would be up to the judge's discretion and might be different than estimates provided by defense counsel. Where a defendant "ple[ads] guilty even after being so informed by the court, h[er] mere allegation that, but for counsel's failure to inform h[er] about the use of relevant conduct in sentencing, [s]he would have insisted on going to trial, is insufficient to establish prejudice." *United States v. Parker,* 720 F.3d 781, 788 (10th Cir. 2013). Given the entirety of the facts, Ms. Vann's assertion she would have proceeded to trial is unconvincing. The government's evidence included not only Ms. Vann's own admissions to law enforcement officers during the investigation, but also incriminating

testimony of both Creech and Braddock who would no doubt have been called at Vann's trial. Moreover, by proceeding to trial, Vann would have lost her acceptance of responsibility points, thus subjecting herself to a higher Guideline range. Her ineffective assistance claim regarding the guilty plea fails because she has proven neither deficiency nor prejudice.

    2.  *Review of Discovery*

Ms. Vann next alleges Mr. Ridenour never reviewed discovery with her. The Court cannot state with certainty whether Mr. Ridenour actually reviewed the discovery with this particular defendant as is his practice with his clients. However, a factual determination of this issue is not necessary. Ms. Vann cannot meet her burden of proving ineffective assistance, because again she cannot establish prejudice.

She explains Mr. Ridenour's advice to plead guilty was based in large part on his concerns about Count Four (manufacturing methamphetamine on premises where children are present or reside). Mr. Ridenour's concerns are unfounded, she argues, because included in the discovery is a lab report showing her granddaughter's t-shirt did not test positive for the presence of methamphetamine. But Ms. Vann misunderstands what the law requires the government to prove to sustain a conviction on Count Four. The government need not prove that methamphetamine itself was on the child's clothes. Notably, the report indicates that no controlled dangerous substances were found. It does not indicate the absence of any chemicals whatsoever. The lab report actually incriminates Ms. Vann. It confirms the presence of methamphetamine and pseudoephedrine on various items associated with methamphetamine production which were seized from Ms. Vann's home and vehicle. This corroborates her admissions to law enforcement that her granddaughter lived with her and that Ms. Vann cooked

methamphetamine in the residence. Ms. Vann has failed to establish ineffective assistance with respect to this claim.

### 3. *The Failure to Appeal*

Ms. Vann acknowledges she executed a waiver of her right to appeal. That form is signed by both Ms. Vann and her former attorney, Jill Webb and confirms that Ms. Webb discussed the advantages and disadvantages of filing an appeal with Ms. Vann after which discussion Ms. Vann chose not to appeal. Ms. Vann now alleges that despite this waiver, Ms. Webb should have filed an appeal on her behalf. She claims she asked Ms. Webb to appeal at which time Ms. Webb "told" her to sign the waiver and then "rushed out of the room" as soon as Defendant signed.

Ms. Webb's recollection is that when she met with Ms. Vann to discuss the pros and cons of appealing, Vann was "clearly angry" about the sentence she had received. Webb told Vann repeatedly that she did not have to sign the waiver form, but ultimately Vann decided not to appeal and signed the waiver form. *Webb Aff.*

Ms. Webb is not ineffective for not appealing when Defendant signed a form indicating she did not desire an appeal. A "defendant who explicitly tells h[er] attorney *not* to file an appeal plainly cannot complain that, by following h[er] instructions, counsel performed deficiently." **Roe v. Flores-Ortega**, 528 U.S. 470, 477 (2000). Accordingly, Ms. Vann's ineffective assistance claims regarding filing an appeal fails.

### 4. *Objections to the PSR*

Ms. Vann's ineffective assistance claim against Mr. Ridenour is denied as he had withdrawn from her case prior to the completion and dissemination of the PSR.

As to Ms. Vann's claims Ms. Webb did not make the necessary objections to the PSR, Ms. Webb hired Nancy Perryman, a former Supervisory Probation Officer for this district, as an expert on the federal sentencing guidelines. After consulting Ms. Perryman, Ms. Webb was unable to find any good faith objections to the PSR.

Ms. Vann appears to argue that pursuant to *Alleyne v. United States*, 133 S.Ct. 2151 (2013), each enhancement under the Guidelines, including the drug quantity used to set her base offense level was required to be proved to the jury beyond a reasonable doubt or admitted by her. The United States Supreme Court in *Alleyne*, extended the rationale of *Apprendi v. New Jersey*, 530 U.S. 466 (2000) - that any fact (other than the fact of a prior conviction) that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt or admitted by the defendant - to judicial fact-finding which increases a statutory mandatory minimum. Because a fact that increases the mandatory minimum "aggravates the legally prescribed range of allowable sentences," the Court explained, "it constitutes an element of a separate, aggravated offense that must be found by the jury." *Alleyne*, 133 S.Ct. at 2162. Unfortunately for Ms. Vann, the Supreme Court limited its ruling to statutory provisions. "Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury, the Court explained. *Id.* at 2163. "We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment." *Id.* The determination of the drug quantity and other enhancement here represent such judicial factfinding.

Ms. Vann also contends this Court improperly attributed the pseudoephedrine purchases of Creech and Braddock to her. Pursuant to U.S.S.G. § 1B1.3, a defendant is accountable for all drug quantities reasonably foreseeable to her and within the scope of the conspiracy. More than

9

once, Ms. Vann admitted pseudoephedrine purchased by Creech and Braddock was obtained for her use in manufacturing methamphetamine. *See Sent. Tr.* at 5 ("Yes, they did buy the pills legally over-the-counter, but all of the other chemicals I obtained alone and I used alone to make the meth.") and *Plea Tr.* at 19 ("they got the pseudoephedrine. I was the manufacturer."). Ms. Vann was responsible for the weight of the entire conspiracy. Similarly, the U.S.S.G. ¶ 3B1.1(c) enhancement is supported by the facts. Vann was a leader/organizer because Creech and Braddock purchased pseudoephedrine on her behalf and for her benefit.

Lastly, Ms. Vann contests the six-level enhancement for creating a substantial risk of harm to a child. Section 2D1.1(b)(13)(D) instructs that "[i]f the offense (i) involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to the life of a minor or an incompetent, increase by 6 levels." Vann relies on the same argument she made as to Count Four: since the lab results did not find actual methamphetamine on her granddaughter's shirt, she is not culpable. However, Vann misunderstands the burden of proof necessary to sustain the sentencing enhancement. The government does not have to prove that the child's burn was actually caused by the chemicals used in the methamphetamine manufacturing process. Rather, the government need only prove by a preponderance of the evidence that Ms. Vann's conduct created a substantial risk of harm to the child. Application Note 18 to U.S.S.G. § 2D1.1 is instructive on this point. In determining whether a substantial risk has been created, the Court shall consider the following factors:

> (I) The quantity of any chemicals or hazardous or toxic substances found at the laboratory, and the manner in which the chemicals or substances were stored.
>
> (II) The manner in which hazardous or toxic substances were disposed, and the likelihood of release into the environment of hazardous or toxic substances.
>
> (III) The duration of the offense, and the extent of the manufacturing operation.

10

(IV) The location of the laboratory (e.g., whether the laboratory is located in a residential neighborhood or a remote area), and the number of human lives placed at substantial risk of harm.

U.S.S.G. § 2D1.1, n. 1

Ms. Vann admitted she "cooked" methamphetamine once or twice a week in the same residence where her grandchild resided. Vann denied manufacturing while her granddaughter was in the house but admitted storing the chemicals inside the residence. After the child sustained the burn and child welfare was called, Vann removed the chemicals from the home and placed them in her vehicle from which they were later seized pursuant to a search warrant.

Manufacturing methamphetamine is an inherently dangerous process. Legislative reports on the Methamphetamine and Anti-Club Proliferation Act of 2000 describe the process as "unstable, volatile and highly combustible" and producing "toxic and often lethal waste products." H.R. Rep. 106-878 at 22 (Sept. 21, 2000). The Tenth Circuit has affirmed the substantial risk of harm to a minor enhancement in circumstances where a child is injured during the actual manufacturing process or is inside the home at the same time methamphetamine is being manufactured. *See United States v. French*, 296 Fed. Appx. 716, 722 (10th Cir. 2008) *United States v. Bell*, 445 Fed. Appx. 69, 72 (10th Cir. 2011) and *United States v. Salazar*, 88 Fed. Appx. 332, 334 (10th Cir. 2004). The six-level enhancement for creating a substantial risk of harm to the life of a child was supported by the evidence and defense counsel was not ineffective in failing to object to PSR where the objections Ms. Vann identifies could not have been made in good faith based on the evidence.

     5.    *The Safety Valve*

Lastly, Ms. Vann argues both Mr. Ridenour and Ms. Webb were ineffective for failing to secure her safety valve relief. Title 18 U.S.C. § 3553(f) provides a safety valve by which a

defendant who is facing a mandatory minimum sentence may instead be sentenced to an advisory guideline range if she is able to meet the statutory requirements. To be eligible for relief, the defendant must establish:

> (1) [s]he does not have more than one criminal history point; (2) [s]he did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) [s]he was not an organizer, leader, manager, or supervisor of others in the offense and was not engaged in a continuing criminal enterprise; and (5) not later than the time of the sentencing hearing, [s]he has truthfully provided to the Government all information and evidence [s]he has concerning the offense that were part of the same course of conduct or of a common scheme or plan.

*United States v. Cervantes*, 519 F.3d 1254, 1256 (10th Cir. 2008).

Ms. Vann's sentence was driven not by the statutory mandatory minimum but by the Guidelines. Accordingly, the safety valve would have been no help to her. Nonetheless, Ms. Vann bears the burden of proving by a preponderance of the evidence that she is entitled to the safety valve adjustment, see *United States v. Stephenson*, 452 F.3d 1173, 1179 (10th Cir. 2006), and she cannot meet this burden. Vann's leadership role disqualifies her for the safety valve. Counsel cannot be ineffective for failing to secure statutory relief for which Vann cannot meet the requirements and which does not have the effect of reducing her sentence.

Because Ms. Vann cannot establish both deficient performance and prejudice for any of her ineffective assistance of counsel claims, the motion to vacate is hereby **DENIED.**

IT IS SO ORDERED this 4th day of December, 2015.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma